FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 SEP -7 PM 4:41

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| VERSUS | * | SECTION "T" |
| HMO LOUISIANA, INC. AND SHIELA LUMBI WIFE OF AND PAUL L. LUMBI D/B/A P& S HOME HEALTH SERVICES | * | MAG. (1) |
| | * | JUDGE PORTEOUS |
| | * | MAGISTRATE SHUSHAN |

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Defendant, HMO LOUISIANA, INC., in the above-numbered and entitled cause, and respectfully moves for the entry of summary judgment dismissing all state law claims brought against it by Plaintiff, Beverly Riley, for the reasons set forth in the Memorandum in Support of Motion for Summary Judgment.

Respectfully submitted,

STEEN, MCSHANE & WILLIAMSON, L.L.C.

By: _____
JOHN E.W. BAAY II (#22928)
1100 Poydras Street
1250 Energy Centre
New Orleans, Louisiana 70163-1250
Telephone: (504) 599-8440
Facsimile: (504) 588-8459

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 7th day of September, 2001, served a copy of the foregoing pleading, by mailing the same by United States mail, properly addressed, and first class postage prepaid, or by hand delivery on counsel for all parties.

_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| | * | |
| VERSUS | * | SECTION "T" |
| | * | |
| HMO LOUISIANA, INC. AND SHIELA LUMBI WIFE OF AND PAUL L. LUMBI D/B/A P& S HOME HEALTH SERVICES | * * * | MAG. (1) |
| | | JUDGE PORTEOUS |
| | * | |
| | * | MAGISTRATE SHUSHAN |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendant, HMO LOUISIANA, INC., (hereinafter "Blue Cross") respectfully submits this memorandum in support of its Motion for Summary Judgment seeking dismissal of all state law claims brought against it by Plaintiff, Beverly Riley. This case arises out of the denial of benefits claimed by Plaintiff under an ERISA-regulated employee benefit plan. Specifically, health insurance benefits were denied for non-payment of premiums. Plaintiff is seeking relief pursuant to ERISA and Louisiana state law. All claims are related to the ERISA plan; therefore, the state law claims are pre-empted and should be dismissed.

1

## BACKGROUND FACTS

On October 22, 1998, Blue Cross received an application for comprehensive group coverage from P&S Health Service (the "Employer"). *See* Exhibit A. The application indicates that the Employer employs twenty-three individuals. The Employer was seeking coverage for management and office personnel only, leaving only four employees eligible for group coverage. The Employer requested an effective date for coverage beginning on November 1, 1998, and selected the type of coverage and all coverage options including deductible and co-insurance amounts, and maximum lifetime benefits.

On October 23, 1998, the application was forwarded to the underwriting department at Blue Cross. After reviewing the application, the underwriting department at Blue Cross approved P&S Health Service for group coverage on November 13, 1998, and the application was sent to group administration to be set up in its system.

On November 23, 1998, Blue Cross mailed identification cards and Certificates of Group Coverage to the Employer for each employee enrolled in the group, including Plaintiff, Beverly Riley. *See* Exhibit B. The records of Blue Cross indicate that the monthly premium of $1,229.00 was received and credited to the group contract for the month of November, 1998. On the following day, Blue Cross sent the Employer the Point of Service Contract of Group Coverage (hereinafter the "Group Plan"). *See* Exhibit C.

On December 11, 1998, Blue Cross pre-certified a 3-day hospitalization for Beverly Riley beginning December 14, 1998. *See* Exhibit D. At that time, she was not notified by Blue Cross that her Employer had not paid the premium for December. She received treatment at Pendleton Memorial Methodist Hospital and incurred medical expenses related to that treatment.

On December 21, 1998, Blue Cross sent the Employer a letter warning that no premium for the month of December had been received. *See* Exhibit E. On January 21, 1999, Blue Cross notified the Employer that the group contract was cancelled for non-payment of premiums. *See* Exhibit F. The effective date of the cancellation was December 1, 1998: the last day for which

premiums had been paid. On January 26, 1999, a certificate of coverage indicating that coverage had been cancelled was sent to all employees, including Beverly Riley. *See* Exhibit G.

All of the claims which are the subject of this lawsuit were incurred by Beverly Riley in December, 1998, after the effective termination date of the group contract. Therefore, none of the claims were paid.

## **LAW AND ARGUMENT**

The essence of Plaintiff's state law claim is that Blue Cross should have told her that the Employer had not paid the December premium when she pre-certified her hospitalization on December 11, 1998. Plaintiff will argue that since Blue Cross takes the position that the policy was cancelled effective December 1, 1998, there was no ERISA-regulated plan in effect after that date. Therefore, Plaintiff argues, Blue Cross' actions are subject to state law including the equitable remedy of detrimental reliance. However, all of Blue Cross' actions are directly related to the ERISA plan, so any relief to which the Plaintiff may be entitled must be pursuant to the civil enforcement provisions of ERISA.

A.  **ERISA Preempts All State Law Claims Which Provide Alternative Enforcement Mechanisms to ERISA's Enforcement Regime**.

The issue before the Court is whether ERISA's preemption clause applies to Plaintiff's state law cause of action.[1] That preemption clause, section 514(a), 29 U.S.C. § 1144(a), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan....(emphasis added).

---

[1] "[T]he Supremacy Clause, U.S. Const. art. VI, may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Plaintiff's state law breach of contract claim is not in "conflict" with ERISA as ERISA contains neither substantive rules of contract construction, *see, e.g., Hammond v. Fidelity Guaranty Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992), nor a general remedy for contract damages, *see, e.g., Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 198 (1st Cir.1997). Because there is no assertion in the case that preemption is "implied," the Court is left to address only whether Plaintiff's claim against Blue Cross is "expressly" preempted by ERISA's preemption clause, ERISA § 514(a), 29 U.S.C. § 1144(a).

3

"The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." ERISA § 514(c)(1), 29 U.S.C. § 1144(c)(1). Discerning the meaning of § 514(a) requires the Court to construe the language of a congressional statute. Therefore, "[t]he question whether a certain state action is pre-empted by federal law is one of congressional intent." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137-38, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (internal quotation marks and citation omitted). Express "ERISA preemption analysis ... involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir.1998). Because the P&S Health Service Point of Service Contract for Group Coverage (hereinafter the "Group Contract") is an ERISA-regulated "employee benefit plan," the preemption analysis focuses on whether Plaintiff's cause of action "relates to" the Group Contract.

In adopting § 514(a), Congress deliberately rejected narrower preemption language directed at "state laws relating to the *specific subjects* covered by ERISA," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (emphasis added), choosing instead to supplant all state laws that "relate to" ERISA-regulated plans. In *Shaw*, the Supreme Court observed that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* This "early attempt[ ] by the Supreme Court to interpret ERISA's preemption clause relied heavily upon textual analysis and a dictionary definition of 'relate to,' " *Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co.*, 126 F.3d 61, 66 (2d Cir.1997), and led to the conclusion that ERISA preemption was "conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Indeed, ERISA preempts a state law that has a connection with or refers to an ERISA- regulated benefits plan, "even if the law is not specifically designed to affect such plans, or the effect is only indirect and even if the law is consistent with ERISA's substantive requirements." *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (internal

4

quotation marks and citations omitted); *see also Rosario-Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d 120, 123 (1st Cir.1995) ("[A] state law may relate to an employee benefit plan even though the law does not conflict with ERISA's own requirements....").

Yet, from ERISA's inception, the Supreme Court recognized that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan," *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890, and that such "is the case with many laws of general applicability," *Greater Washington Bd. of Trade*, 506 U.S. at 130 n. 1, 113 S.Ct. 580. Drawing the line between those state laws that "relate to" ERISA-regulated plans, and those that are only "tenuous, remote, or peripheral" has proven considerably difficult in practice, producing an "avalanche of litigation." *De Buono v. NYSA-ILA Med. & Clinical Serv. Fund*, 520 U.S. 806, 809 n. 1, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (collecting Supreme Court ERISA preemption cases and documenting the enormous volume of cases in the lower federal courts). This case calls upon the Court to once again draw such a line.

In drawing that line, cases emphasizing ERISA's carefully crafted civil enforcement scheme are particularly relevant.[2] *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Ingersoll-Rand*, 498 U.S. at 143-44, 111 S.Ct. 478; *Fitzgerald v. Codex Corp.*, 882 F.2d 586, 588 (1st Cir.1989) (concluding that preemption extends to "causes of action

---

[2] ERISA § 502(a), 29 U.S.C. § 1132(a), provides in relevant part:
(a) Persons empowered to bring a civil action
A civil action may be brought--
(1) by a participant or beneficiary--
. . . . .
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) ... by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [ERISA § 409: "Liability for Breach of Fiduciary Duty"];
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

5

within the scope of the civil enforcement provisions of ERISA."). In *Pilot Life*, the Supreme Court concluded that "[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Id.* at 54, 107 S.Ct. 1549 (emphasis added). The Court explained:

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. *Id.*

Similarly, in *Turner v. Fallon Community Health Plan*, 127 F.3d 196 (1st Cir.1997), the First Circuit Court of Appeals found state common law claims preempted after determining that they fell within ERISA's exclusive civil enforcement regime. The plaintiff brought breach of contract and other state law claims, and a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), against a health maintenance organization, charging that it wrongly denied a request to fund a certain cancer treatment. *See id.* at 197-98. The plaintiff sought compensatory damages, arguing "that if ERISA provided no federal [damages] remedy, it ought not be read to preempt his state-law claims;" alternatively, "if ERISA preempted the state-law claims, then a federal remedy ought to be inferred or created by the court to permit damages for wrongful withholding of treatment under the employee benefits plan." *Id.* at 198. The court rejected both arguments, finding the state law claims preempted and declining the plaintiff's invitation to fashion a federal remedy not authorized by ERISA's remedial scheme. *See id.* at 198-200. First, the court concluded that ERISA § 501(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides a remedy to "secure *benefits* under the plan rather than *damages* for a breach of the plan." *Id.* at 198 (emphasis added). The court noted that "the Supreme Court has stressed that ERISA does not create compensatory or punitive damage remedies where an administrator of a plan fails to provide the benefits due under that plan." *Id.* (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96

(1985)). Congress's decision not to allow causes of action for damages under ERISA "is not a minor technicality: damage awards may increase effective coverage but may also add significantly to the costs of coverage." *Id.* at 198-99. Second, the court held that although "[a]bsent preemption, a health benefits plan ... could certainly be treated as a contract enforceable under state law and subject to the usual contractual remedies, including compensatory damages," ERISA's preemption clause "preclude[s] state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights." *Id.* at 199.

While the court acknowledged in *Turner* that the Supreme Court has "set some new limits on preemption," it stressed that ERISA continues to preempt "a state's attempt to provide state remedies for what is in essence a plan administrator's refusal to pay allegedly promised benefits." *Id.* at 199. Such reasoning is consistent with, and indeed supported by *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the case in which the Supreme Court first acknowledged the unworkability of a literal reading of ERISA § 514(a)'s "relate to" standard, and ruled that courts must "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." According to the *Travelers* Court, ERISA's purpose was " 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law.' " *Id.* at 656, 115 S.Ct. 1671 (quoting *Ingersoll-Rand*, 498 U.S. at 142, 111 S.Ct. 478). The Court identified three categories of state laws that "relate to" ERISA plans in such a way that preemption of those laws furthers this purpose: (1) state laws that "mandate[ ] employee benefit structures or their administration," (2) state laws that "bind plan administrators to [a] particular choice," and (3) state law causes of action that provide "alternative enforcement mechanisms" to ERISA's enforcement regime. *See id.* at 658-59, 115 S.Ct. 1671. The third category has particular relevance for the present inquiry. In this vein, the First Circuit has stated that in order to assess whether the state law cause of action is an alternative enforcement mechanism, the court must "look beyond the face of

the complaint" and determine the real nature of the claim "regardless of plaintiff's ... characterization." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 5 (1st Cir.1999).

### B. Plaintiff's State Law Claims Seek an Alternative Enforcement Mechanism to ERISA's Enforcement Regime.

Plaintiff's complaint alleges two causes of action that make no reference to federal law and that arguably seek state law remedies: Count Two alleges that Blue Cross "unlawfully and in bad faith violated the provisions of its insurance contract with the Plaintiff by refusing to offer Plaintiff the opportunity to continue her health insurance coverage after termination," and Count Three asserts a claim for detrimental reliance based on the pre-certification of the December 14th hospitalization.

Any state law remedy for Count Two is clearly preempted. Whether Blue Cross violated any provision of the Group Contract must be addressed by the civil enforcement provisions of ERISA § 502(a).

Count Three seeks damages based on detrimental reliance. Detrimental reliance or equitable estoppel is not favored in Louisiana law and is properly applied only to representations of fact. *Morris v. Friedman*, 94-2808, p. 9 (La.11/27/95), 663 So.2d 19, 25. In *Morris*, the supreme court recognized three elements required for the application of detrimental reliance: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. 663 So.2d at 25. The representation required for the application of this doctrine is usually characterized as a "misrepresentation," which generally implies intent and suggests deliberate falsification. *Eicher v. Louisiana State Police*, 97-0121, p. 7 (La.App. 1st Cir.2/20/98), 710 So.2d 799, 804, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51.

Even assuming, *arguendo*, that Plaintiff could make a prima facia case of detrimental reliance, the cause of action is closely *related to* the Group Plan. First, the requirement that Plaintiff pre-certify treatment is found in the Group Plan. Second, Plaintiff was seeking pre-certification for treatment that, if ultimately covered, would have been covered pursuant to the schedule of benefits

set forth in the Group Plan. Third, Plaintiff is challenging Blue Cross' actions of not disclosing the current payment status of the Group Plan.

In all three instances, Blue Cross' actions were based solely on the relationship between Blue Cross, the Employer and the Plaintiff. That relationship was created by the Group Plan; so if Blue Cross acted improperly, it did so completely within the confines of the Group Plan. Further, if benefits were wrongly denied, ERISA's enforcement regime is the Plaintiff's exclusive source for a remedy. Therefore, any remedy which might be available to Plaintiff under Louisiana law is preempted by ERISA and should be dismissed.

Respectfully submitted,

STEEN, MCSHANE & WILLIAMSON, L.L.C.

By: _____
JOHN E.W. BAAY II (#22928)
1100 Poydras Street
1250 Energy Centre
New Orleans, Louisiana 70163-1250
Telephone: (504) 599-8440
Facsimile: (504) 588-8459

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 7th day of September, 2001, served a copy of the foregoing pleading, by mailing the same by United States mail, properly addressed, and first class postage prepaid, or by hand delivery on counsel for all parties.

_____

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| | * | |
| VERSUS | * | SECTION "T" |
| | * | |
| HMO LOUISIANA, INC. AND SHIELA | * | MAG. (1) |
| LUMBI WIFE OF AND PAUL L. LUMBI | * | |
| D/B/A P& S HOME HEALTH SERVICES | * | JUDGE PORTEOUS |
| | * | |
| | * | MAGISTRATE SHUSHAN |

### STATEMENT OF UNCONTESTED FACTS

NOW INTO COURT, through undersigned counsel, comes Defendant, HMO LOUISIANA, INC., (hereinafter Blue Cross") in the above-numbered and entitled cause, and respectfully submits the following uncontested facts

1. On October 22, 1998, Blue Cross received an application for Comprehensive Group Coverage from P&S Health Service (the "Employer"). A copy is attached as Exhibit A.

2. At the time the application was received, the Employer employed twenty-three individuals and requested coverage for management and office personnel only, leaving four employees eligible for group coverage.

3. The Employer requested an effective date for coverage beginning on November 1, 1998, and selected the type of coverage and all coverage options including deductible and co-insurance amounts, and maximum lifetime benefits.

4. The underwriting department at Blue Cross approved P&S Health Service for group coverage on November 13, 1998, and the application was sent to group administration to be set up in their system.

5. On November 23, 1998, Blue Cross mailed identification cards and Certificates of Group Coverage to the Employer for each employee enrolled in the group, including Plaintiff, Beverly Riley. A copy Plaintiff's Certificate of Group Coverage is attached as Exhibit B.

6. On November 24, 1998, Blue Cross sent the Employer the Point of Service Contract for Group Coverage (hereinafter the "Group Plan"). A copy is attached as Exhibit C.

7. The Group Plan was an ERISA-regulated employee benefit plan.

8. The monthly premium of $1,229.00 was credited to the group contract for the month of November, 1998.

9. On December 11, 1998, Blue Cross pre-certified a three-day hospitalization for Plaintiff. At that time, the Employer had not paid the premium for December, and Plaintiff was not notified of the potential problem. A copy of the pre-certification letter is attached as Exhibit D.

10. On December 21, 1998, Blue Cross sent the Employer a letter warning that no premium for the month of December had been received. A copy is attached as Exhibit E.

11. On January 21, 1999, Blue Cross notified the Employer that the Group Plan was cancelled for non-payment of premiums. A copy is attached as Exhibit F.

12. The effective date of the cancellation was December 1, 1998: the last for which premiums had been paid.

13. On January 26, 1999, a certificate of coverage indicating that coverage had been cancelled was sent to all employees, including Beverly Riley. A copy of the certificate sent to Plaintiff is attached as Exhibit G.

14. All of the claims which are the subject of this lawsuit were incurred by Beverly Riley after the effective termination date of the group contract. Therefore, none of the claims were paid.

Respectfully submitted,

STEEN, MCSHANE & WILLIAMSON, L.L.C.

By: _____
JOHN E.W. BAAY II (#22928)
1100 Poydras Street
1250 Energy Centre
New Orleans, Louisiana 70163-1250
Telephone: (504) 599-8440
Facsimile: (504) 588-8459

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 7th day of September, 2001, served a copy of the foregoing pleading, by mailing the same by United States mail, properly addressed, and first class postage prepaid, or by hand delivery on counsel for all parties.

_____

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| | * | |
| VERSUS | * | SECTION "T" |
| | * | |
| HMO LOUISIANA, INC. AND SHIELA | * | MAG. (1) |
| LUMBI WIFE OF AND PAUL L. LUMBI | * | |
| D/B/A P& S HOME HEALTH SERVICES | * | JUDGE PORTEOUS |
| | * | |
| | * | MAGISTRATE SHUSHAN |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that the Motion for Summary Judgment filed herewith will be decided pursuant to the Minute Entry dated August 22, 2001. Accordingly, Plaintiff has until Monday, September 24, 2001 to file any opposition and any reply thereto should be filed no later than Monday, October 1, 2001. *Hearing set September 24, 2000 at 9:00 am before Magistrate Judge Shushan.*

1

Following the filing of these papers, the Motion for Summary Judgment will be taken under submission without oral argument.

                Respectfully submitted,

                STEEN, MCSHANE & WILLIAMSON, L.L.C.

By: _____
     JOHN E.W. BAAY II (#22928)
     1100 Poydras Street
     1250 Energy Centre
     New Orleans, Louisiana 70163-1250
     Telephone: (504) 599-8440
     Facsimile: (504) 588-8459

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 7th day of September, 2001, served a copy of the foregoing pleading, by mailing the same by United States mail, properly addressed, and first class postage prepaid, or by hand delivery on counsel for all parties.

_____

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**