

UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| VERSUS | * | SECTION   "T" |
| HMO LOUISIANA, INC., ET AL | * | MAG. (1) |

* * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HMO LOUISIANA'S MOTION FOR SUMMARY JUDGMENT

### FACTS

In October and November of 1998, Plaintiff Beverly Riley was employed by Defendants Sheila Lumbi, wife of and Paul L. Lumbi d/b/a P&S Health Services (P&S) as a nurse. On or about October 22, 1998, P&S submitted an application for group health insurance coverage for its employees, including Plaintiff Beverly Riley, with Defendant HMO Louisiana, Inc. (HMO). In November of 1998, Plaintiff Beverly Riley submitted her own application for coverage under the P&S policy with HMO.

In November of 1998, the applications of both P&S and Plaintiff were approved by Defendant HMO. The monthly premium for the group health insurance policy which HMO issued to P&S was $1,229.00. P&S paid its first premium on November 24, 1998. Included in that premium was

coverage for Plaintiff Beverly Riley. Thereafter, on December 4, 1998, Defendant HMO mailed out the group insurance contract to P&S.

In early December of 1998, Plaintiff Beverly Riley contacted Defendant and told HMO that her gynecologist, Dr. Charles Rene, had advised her that she needed surgery. This surgery was scheduled to be performed on December 14, 1998 at Pendelton Memorial Methodist Hospital.

On December 11, 1998, Defendant HMO notified Plaintiff in writing that her December 14, 1998 surgery had been pre-certified for a three day hospital stay. Plaintiff was admitted to Pendelton Memorial Methodist Hospital on December 14, 1998 and Dr. Rene performed the scheduled surgery on that date. Plaintiff remained hospitalized at Pendelton for three days. At no time did Defendant HMO advise Plaintiff that P&S had not paid the premium on its group health policy or that there might be a problem with her coverage under P&S's group policy.

On December 21, 1998, Defendant HMO wrote to P&S to advise that Defendant "did not receive your December 01, 1998 payment." On January 21, 1999, Defendant HMO wrote to P&S and advised that P&S's group health insurance coverage had been cancelled for "non-payment of premium." The cancellation was effective back to December 1, 1998. Thereafter, on January 26, 1999, Defendant HMO sent a notice to Plaintiff advising her that her coverage under the P&S policy had been terminated. After the bills for Plaintiff's December 14th - 16th, 1998 medical hospitalization and surgery were presented for payment, Defendant HMO denied coverage and refused to pay said bills.

If Plaintiff had been timely advised by HMO that Defendant was not going to pay for her December 14th - 16th, 1998 hospitalization and surgery, Plaintiff would have made other arrangements

which would have been less costly to her for said surgery.

## ARGUMENT

In <u>Mackey v. Lanier Collection Agency and Service, Inc.</u>, 486 U.S. 824, 834, 108 S.Ct. 2182, 2187 100 L.Ed.2d 836 (1988), the Supreme Court stated:

> **ERISA plans may be sued in a second type of civil action, as well. These cases – – lawsuits against ERISA plans for run-of-the-miss state law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan – are relatively common place.**

In <u>DeBuono v. NYSA - ICA Medical and Clinical Services Fund</u>, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997), the Supreme Court recognized that there is a "normal presumption against preemption" by ERISA. In discussing this strong presumption, the Supreme Court stated:

> **Respondents therefore bear the considerable burden of overcoming "the starting presumption that Congress did not intend to supplant state law." <u>Travelers</u>, 514 U.S., at 654, 115 S.Ct. at 1676.**

In its memorandum, Blue Cross acknowledges that the Supreme Court's June 2, 1997 decision in <u>DeBuono</u> "set some new limits on preemption." <u>Turner v. Fallon Community Health Plan</u>, 127 F.3d 196 (1st Cir. 1997).

A. **PLAINTIFF'S DETRIMENTAL RELIANCE CLAIM DOES NOT REQUIRE REFERENCE TO BLUE CROSS' POLICY. THEREFORE PLAINTIFF'S DETRIMENTAL RELIANCE CLAIM IS NOT PREEMPTED BY ERISA**

In <u>Hall v. Blue Cross/Blue Shield of Alabama</u>, 134 F.3d 1063, 1066 (11th Cir. 1998), a post-<u>Debuono</u> decision, the Court gave clear guidance for determining when a Plaintiff's state law claims involving employer provided health insurance issues were preempted by ERISA. In <u>Hall</u>, the plaintiff sued Blue Cross, her employer provided health benefits insurer, for allegedly fraudulently inducing

3

her to enroll in her employer's health benefit plan. Ms. Hall alleged that Blue Cross fraudulently induced her to enroll in her employer's health benefit plan by misrepresenting the material scope of its coverage for pre-existing conditions. In finding that her fraudulent misrepresentation claim was preempted by ERISA, the Court at page 1066 stated:

> **Substantiating Hall's allegation that HMO misrepresented the scope of its coverage for pre-existing conditions ultimately requires a comparison between the agents' statements and the written policy. This necessary resort to the terms and provisions of the Blue Cross's employees benefit plan plainly implicated ERISA.**

In <u>Mehaffey v. Boston Mutual Life Ins. Co.</u>, 31 F.Supp.2d 1329, 1335 (M.D. Ala. 1998), the plaintiffs filed suit in state court against their employer provided health benefits insurer for fraudulent inducement. Defendant removed the suit to federal court and plaintiffs filed a motion to remand. The Court granted plaintiffs' motion to remand. In doing so, the Court noted that ERISA does not preempt all suits for fraudulent inducement which employees file against their employer provided health benefit insurers. In finding that plaintiffs' claims were not preempted by ERISA, the Court relied on the fact that plaintiffs claims were not based upon an insurance policy. The Court stated:

> **The absence of a policy is an essential difference between the present case and those cases where courts have found preemption of fraudulent inducement claims. The plaintiffs do not make reference to any policy, not do they make reference to any provisions in the policy. Their claims turn on the absence of a policy, not its interpretation.**

In <u>Mehaffey</u> at page 1335, the Court noted that the plaintiffs do not need defendant's policy to prove their claims. Louisiana law regarding claims based upon the legal concept of "detrimental reliance" is contained in Civil Code Article 1967. It provides as follows:

4

> **Art. 1967.    Cause defined; detrimental reliance**
>
> **Cause is the reason why a party obligates himself.**
>
> **A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.**

In discussing the issue of damages which are award able under C.C. Art. 1967, the Revision Comments to C.C. Art. 1967 provide in pertinent part as follows:

> **(e)    Under this Article, the Court may grant damages, rather than specific performance, ...**

Thus, in order to prevail on her claim for monetary damages based upon C.C. Art. 1967, detrimental reliance, Plaintiff does not have to introduce into evidence HMO's policy, and as a result, Plaintiff's detrimental reliance is not preempted by ERISA. See Hall and Mehaffey.

**B.    THERE ARE FACTUAL ISSUES PRESENT WHICH PRECLUDE THE ISSUANCE ON A SUMMARY JUDGMENT ON PLAINTIFF'S DETRIMENTAL RELIANCE CLAIM**

In Morris v. Friedman, 663 So.2d 19, 25 (La. 1995), the Louisiana Supreme Court listed the elements of a detrimental reliance claim. They are:

a)    **A representation by conduct or work;**

b)    **Justifiable reliance thereon by the plaintiff; and**

c)    **A change in plaintiff's position to her detriment based upon the reliance.**

Here, all three elements are present. Plaintiff's affidavit establishes that she could have either postponed her surgery or she could have had her surgery at Charity Hospital. **See Exhibit 1 hereto,**

**Plaintiff's Affidavit.** However, based upon HMO's written pre-certification, Plaintiff underwent surgery during her December 11th - 14th, 1998 hospitalization.

Clearly Plaintiff has a viable detrimental reliance claim, or at the very least, there exists issues of fact which preclude the issue of a summary judgment on Plaintiff's detrimental reliance claim.

Respectfully submitted,

_____
CLEMENT P. DONELON, BAR #4996
Attorney at Law
4508 Clearview Parkway, Suite 1-B
Metairie, Louisiana 70006-2379
Telephone: (504) 887-0077

---

CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon opposing counsel by hand delivery or by placing a copy of same in the U.S. Mails, postage prepaid and properly addressed, on this _____ day of _____, 2001.

_____

---

UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| VERSUS | * | SECTION "T" |
| HMO LOUISIANA, INC. AND SHEILA LUMBI WIFE OF AND PAUL L. LUMBI D/B/A P&S HOME HEALTH SERVICES | * * | MAG. (1) **TRIAL BY JURY DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF BEVERLY RILEY

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

**BEFORE ME**, the undersigned authority personally came and appeared:

**BEVERLY RILEY**

who after first being duly sworn did depose and say that:

1. Affiant stated that she began working for P&S Home Health Service (P&S) in September of 1996.

2. Affiant stated that she remained employed by P&S until on or about November 3, 1998.

3. Affiant stated that throughout her employment with P&S she was always insured under P&S's group health insurance policy.



4. Affiant stated that she received a card from Defendant HMO Louisiana, Inc. which provided that she was covered by said insurer pursuant to Health Group Policy Number 265031000.

5. Affiant stated that the benefit card which she received from HMO Louisiana had an effective date of 11/1/98. **See Exhibit A hereto, Copy of Insurance Card Issued by HMO Louisiana to Plaintiff.**

6. Affiant stated that in approximately the middle of November of 1998 she was advised by her physician that she was going to need to have a hysterectomy.

7. Affiant stated she notified HMO Louisiana that she was going to have a hysterectomy.

8. Affiant stated that on or about December 11, 1998 Defendant HMO Louisiana approved her surgery and pre-certified her for a three (3) day hospitalization at Pendleton Memorial Hospital. **See Exhibit B, Copy of December 11, 1998 letter from HMO Louisiana to Plaintiff regarding pre-certification of her hospitalization.**

9. Affiant stated that she was hospitalized from December 14th - 16th, 1998 for the purpose of having a hysterectomy.

10. Affiant stated that about 6 weeks after her surgery and hospitalization Affiant first learned that Defendant HMO Louisiana was not going to pay for her surgery and hospitalization.

11. Affiant stated that as a result of Defendant HMO's refusal to pay for her hysterectomy and related medical expenses she was personally responsible for all her surgery related medical expenses including her bill for her three day hospitalization at Pendleton Methodist Hospital.

12. Affiant stated that as a result of HMO Louisiana's refusal to pay her surgery related medical expenses Affiant was legally responsible for the following surgery related bills:

    a)    Pendleton Memorial Methodist Hospital . . . . . . . . . . . . . . . . . . . . . . . $20,800.32

    b)    Charles Rene, M.D. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,500.00

    c)    Joseph Mancuso, M.D. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $527.00

    d)    Anesthesia East, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,350.00

            TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $25,177.32

13.    Affiant stated that had HMO Louisiana advised her that her surgery was not going to be covered or may not be covered because P&S had not paid its insurance premium Affiant would have made other arrangements to have the surgery and one such possible option was for Affiant to have her surgery at Charity Hospital.

FURTHER AFFIANT SAYETH NOT.

/s/ Beverly Riley
Beverly Riley

SWORN TO AND SUBSCRIBED BEFORE ME,
THE UNDERSIGNED AUTHORITY,
THIS 19th DAY OF September, 2001.

/s/ Notary
NOTARY PUBLIC

3

HMOLA NETWORK
Physician Co-Pay:   $10.00

Primary Care Physician:
   Dr. Renee H Singleton
   Phone: 504-246-0800

Referral Authorization Call:
   1-800-376-7973

 

BC Plan 170  BS Plan 670           Effective Date
                                    11/01/1998
BEVERLY    RILEY
POINT OF SERVICE PLAN

                                    Member No
Health Grp  26503/000  XUA4378439591
Paid Grp    BCTRDGD       4378439591
           *A subsidiary of Blue Cross and Blue Shield of Louisiana
03100 00009 0796   independent licensees of the Blue Cross and Blue Shield Association

**Customer Service Inquiries**

For questions regarding benefits, claims, coverage
or to change Primary Care Physicians, call
   **Customer Service at 1-800-376-7741**
MEMBERS:QUESTIONS ABOUT DRUG CLAIMS CALL:
   1-800-336-3862
PHARMACIST CALL:PAID PHARMACY HELP DESK:
   1-800-922-1557

**Authorization For Services**

To receive network benefits, all services outside the
Primary Care Physician's office require an authorized
referral. The Primary Care Physician must call
1-800-376-7973 to obtain authorization for these services
All hospitalizations require Pre-Admission Certification.
       **CALL 1-800-376-7973**
Emergency admissions must be certified within 48 hours.

**For Urgent Care While Traveling
Call 1-800-4-HMO-USA**



EXHIBIT A



## HMO Louisiana, Inc.

A subsidiary of Blue Cross and Blue Shield of Louisiana, independent licensees of the Blue Cross and Blue Shield Association.

LOUISIANA BLUE HEALTHPLANS

P. O. Box 98024
Baton Rouge, Louisiana 70898-9024

Phone: 225/293-0625
       800/376-7741
Fax:   225/247-2680

December 11, 1998

BEVERLY RILEY
1516 ST ANN
NEW ORLEANS, LA  70116

Patient: BEVERL RILEY
Pre-certification # : 198120832
Contract number: 4378439591
Date of service: 12/14/1998
Hosp: PENDLETON MEMORIAL METHODI

The admission to the hospital referenced above has been initially approved for 3 days.

IT IS IMPORTANT FOR YOU TO KNOW THAT . . .

this approval of the inpatient hospital setting is based on information provided by the above listed hospital and/or physician and DOES NOT AUTHORIZE A GUARANTEE OF BENEFITS.

IF THE PATIENT REQUIRES CONTINUED HOSPITALIZATION BEYOND THE NUMBER OF DAYS APPROVED . . .

the attending physician or authorized hospital representative should contact the Managed Care Department at 1-800-376-7973 on or before the above days expire. BENEFITS MAY BE DENIED FOR SERVICES RENDERED DURING ADDITIONAL HOSPITAL DAYS THAT ARE NOT AUTHORIZED.

The terms of your contract place on you, the subscriber, the sole responsibility for ensuring that all inpatient hospitalizations are pre-certified.

Utilization Management Department

cc:  Attending Physician
     Facility
     Member File

(SUBSCRIBER COPY)


EXHIBIT B

UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| VERSUS | * | SECTION "T" |
| HMO LOUISIANA, INC., ET AL | * | MAG. (1) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S STATEMENT OF CONTESTED MATERIAL FACTS

NOW INTO COURT, through undersigned counsel comes Plaintiff, Beverly Riley, for the purpose of filing Plaintiff's statement of contested material facts.

1. Plaintiff Beverly Riley can prove her monetary damages and her detrimental reliance claim without resorting to or introducing into evidence Defendant HMO Louisiana's group health insurance policy.

2. If Defendant HMO Louisiana had advised Plaintiff that her December 14th - 16th, 1998 surgery and hospitalization were not going to be covered, Plaintiff could have made other arrangements to have her surgery, including having her surgery performed at Charity Hospital in New Orleans at no cost to her.

Respectfully submitted,

*[signature]*

CLEMENT P. DONELON, BAR #4996
Attorney at Law
4508 Clearview Parkway, Suite 1-B
Metairie, Louisiana 70006-2379
Telephone: (504) 887-0077

---

CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon opposing counsel by hand delivery or by placing a copy of same in the U.S. Mail, postage prepaid and properly addressed, on this ___ day of September, 2001

*[signature]*