

MINUTE ENTRY
SHUSHAN, M.J.
OCTOBER 15, 2001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEVERLY RILEY | CIVIL ACTION |
| VERSUS | NO: 00-0046 |
| HMO LOUISIANA, INC., ET AL | SECTION: "T"(1) |

**HEARING ON MOTION**

APPEARANCES:   Submitted on briefs

MOTION:   MOTION OF HMO LOUISIANA, INC. FOR PARTIAL SUMMARY JUDGMENT

**GRANTED**

      The defendant, HMO Louisiana, Inc. ("Blue Cross"), filed a motion for summary judgment to dismiss all of the state law claims of the plaintiff, Beverly Riley ("Riley"). Riley filed an opposition and Blue Cross filed a reply. The parties consented to proceed before the undersigned. Rec. doc. 34. This matter is fully briefed and before the undersigned for a ruling. The motion for summary judgment is granted because Riley's state law claims are preempted by ERISA's preemption clause. 29 U.S.C. § 1144(a).



## Standard for Summary Judgment

Fed.R.Civ.P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir.1986). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 477 U.S. at 323, 106 S.Ct. at 2553; see Lujan, 497 U.S. at 885-86, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 497 U.S. at 871-73, 110 S.Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir. 1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 497 U.S. at 888, 110 S.Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

## Statement of Undisputed Facts

Riley argues that there are factual issues that preclude summary judgment, but does not point to any. After describing the elements under Louisiana law for a claim of detrimental reliance, Riley states that if she had known there was no coverage, she could have postponed her surgery or gone to Charity Hospital. However, because Blue Cross provided Riley written notice that her surgery was pre-certified, Riley underwent surgery at Pendelton Memorial Methodist Hospital and incurred costs of over $25,000. These statements are supported by Riley's affidavit, attached to Rec. doc. 37, and they are not disputed by Blue Cross. Accordingly, the undersigned adopts Riley's statement of facts in its entirety as the description of the undisputed facts, which are as follows:

In October and November of 1998, Riley was employed by Defendants Sheila Lumbi, wife of and Paul L. Lumbi d/b/a P&S Health Services (P&S) as a nurse. On or about October 28, 1998, P&S submitted an application for group health insurance coverage for its employees, including Plaintiff Beverly Riley, with Defendant HMO Louisiana, Inc. (HMO). In November of 1998, Plaintiff Beverly Riley submitted her own application for coverage unde the P&S policy with HMO.

In November of 1998, the applications of both P&S and Plaintiff were approved by Defendant HMO. The monthly premium for the group health insurance which HMO issued to P&S was $1,229.00. P&S paid its first premium on November 24, 1998. Included in that premium was coverage for Plaintiff Beverly Riley. Thereafter, on December 4, 1998, Defendant HMO mailed out the group insurance contract to P&S.

In early December of 1998, Plaintiff Beverly Riley contacted Defendant and told HMO that her gynecologist, Dr. Charles Rene, had advised her that she needed surgery. This surgery was scheduled to be performed on December 14, 1998 at Pendelton Memorial Methodist Hospital.

On December 11, 1998, Defendant HMO notified Plaintiff in writing that her December 14, 1998 surgery had been pre-certified for a three day hospital stay. Plaintiff was admitted to Pendelton Memorial Methodist Hospital on December 14, 1998 and Dr. Rene performed the scheduled surgery on that date. Plaintiff remained hospitalized at Pendelton for three days. At no time did Defendant HMO advise Plaintiff that P&S had not paid the premium on its group health policy or that there might be a problem with her coverage under P&S's group policy.

On December 21, 1998, Defendant HMO wrote to P&S to advise that Defendant "did not receive your December 01, 1998." On January 21, 1999, Defendant HMO wrote to P&S and advised that P&S's group health insurance coverage had been canceled for "non-payment of premium." The cancellation was effective back to December 1, 1998. Thereafter, on January 26, 1999, Defendant HMO sent a notice to Plaintiff advising her that her coverage under the P&S policy had been terminated. After the bills for Plaintiff's December 14th - 16th, 1998 medical hospitalization and surgery were presented for payment, Defendant HMO denied coverage and refused to pay said bills.

If Plaintiff had been timely advised by HMO that Defendant was not going to pay for her December 14th - 16th, 1998 hospitalization and surgery, Plaintiff would have made other arrangements which would have been less costly to her for said surgery.

Rec. doc. 37.

Discussion

Riley shows that in Hall v. Blue Cross/Blue Shield of Alabama, 134 F.3d 1063, 1066 (11th Cir. 1998), the Eleventh Circuit was confronted with a state law claim of fraudulent inducement and gave guidance for determining when such state law claims were preempted under ERISA. In Hall the defendant denied coverage for the plaintiff's surgery under the exclusion for pre-existing conditions. The plaintiff contended the defendant's agents represented to her and her employer that only known pre-existing conditions would not be covered for a period of 270 days and all other pre-existing conditions were covered. The plaintiff contended her claim was for an unknown pre-existing condition. After reviewing the Supreme Court precedent, the Eleventh Circuit said;

> Ultimately, no court will be able to determine whether Hall has been fraudulently induced without resorting to the written policy and assessing the truth of the agents' representations. Because the terms of Blue Cross's ERISA-governed policy are critical to the resolution of Hall's fraudulent inducement claims, her cause of action is sufficiently related to an employee benefits plan to fall within ERISA's preemptive scope.
>
> * * *
>
> [S]ubstantiating Hall's allegation that Blue Cross misrepresented the scope of its coverage for preexisting conditions ultimately requires a comparison between the agents' statements and the written policy. This necessary resort to the terms and provisions of Blue Cross's employee benefits plan plainly implicates ERISA.

134 F.3d at 1065-66. Riley also cites Mehaffey v. Boston Mutual Life Insurance Co., 31 F.Supp.2d 1329 (M.D. Ala. 1998), where a group of teachers brought claims of fraudulent inducement. The plaintiffs claimed that defendant's agent told them on several occasions that the group health insurance policy became effective on July 1, 1999, but, in fact, the policy never was issued. Id. at 1332. Citing Hall and other authorities, the district judge in Mehaffey said Hall did not stand for the broad proposition that ERISA preempts all fraudulent inducement claims. Id. at 1335.

> The absence of a policy is an essential difference between the present case and those cases where courts have found preemption of fraudulent inducement claims. The Plaintiffs do not claim benefits under the policy, nor do they make reference to any provisions in the policy. Their claims turn on the absence of a policy, not its interpretation. . . . Their claims will rise or fall on the agent's representations alone.

Id. at 1335.

Riley's reliance on Hall and Mehaffey is misplaced. Unlike Mehaffey there was a policy of insurance. Riley's employer paid the premiums for one month, November, 1998, but failed to pay the premium for December. Riley argues that she does not have to introduce evidence of the Blue Cross policy issued to her employer, so the policy is not critical to the resolution of her claim of detrimental reliance. There is no merit to this position. Riley's own statement of the facts reflects that she must introduce evidence that Blue Cross pre-certified Riley for surgery, but ultimately refused to pay for the surgery because P&S did not pay the December premium. This evidence necessarily implicates the policy and requires that one resort to its terms. It was the existence of the policy that gave rise to the issuance of the written pre-certification and the purported right to cancel the policy for non-payment of premiums.

## Conclusion

For the foregoing reasons, it is ORDERED that the motion of HMO Louisiana, Inc. for partial summary judgment dismissing all of Riley's state law claims, including detrimental reliance, is GRANTED.

As per the undersigned's minute entry of August 21, 2001 (Rec. doc. 33), it is FURTHER ORDERED as follows:

1.  The pretrial conference set for November 5, 2001, and the trial before a jury set for

November 19, 2001, are removed from the docket and the Clerk shall remove this action from the jury docket;

2. On or before November 16, 2001, Riley shall file the administrative record with the clerk and a motion for summary judgment;

3. On or before December 7, 2001, HMO Louisiana, Inc. shall file a cross motion for summary judgment; and

4. Riley may file a reply memorandum on or before December 14, 2001, at which time the matter shall be submitted.

SALLY SHUSHAN
United States Magistrate Judge