

UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BEVERLY RILEY | * | CIVIL ACTION NO. 00-0046 |
| | * | |
| VERSUS | * | SECTION   "T" |
| | * | |
| HMO LOUISIANA, INC., ET AL | * | MAG. (1) |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S REPLY MEMORANDUM IN OPPOSITION OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

### FACTS

In its Memorandum in Support of its Motion for Summary Judgment, Defendant argues that it did not breach the duty which it owed to Plaintiff. Significantly, Defendant HMO did not argue that it did not owe a fiduciary duty to the Plaintiff. Previously, Defendant admitted that it did owe a fiduciary duty to the Plaintiff and Defendant HMO breached that duty.

### ARGUMENT

In Cerasoli v. Xomed, Inc., 47 F.Supp.2d 401, 405 (W.D. N.Y. 1999), the Court stated the following regarding claims alleging a breach of a fiduciary duty under ERISA:

> **To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under a plan, the plaintiff must show:**
>
> **(1) that the defendant was acting in a fiduciary capacity when it made the**

alleged misrepresentation; (2) that the defendant made a material misrepresentation; (3) that the plaintiff relied on that misrepresentation to his detriment. <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 116 S.Ct. 1065, 1071, 134 L.Ed.2d 130 (1996); <u>Ballone v. Kodak Co.</u>, 109 F.3d 117, 122, 126 (2nd Cir. 1997).

In this case, the Plaintiff has satisfied all the above listed elements of a breach of fiduciary duty case. Defendant HMO has admitted that it was a co-fiduciary and that it owed a duty to Plaintiff and other Plan participants to advise them if their health insurance coverage had been suspended or terminated. **See Exhibit A, Defendant's Benefits Administrator's December 21, 1998 Letter to P&S Health Services.** On December 11, 1998, Defendant HMO made a material misrepresentation to the Plaintiff regarding her health insurance coverage when it pre-certified and approved her December 14, 1998 hospitalization and surgery. **See Exhibit B, Defendant's Letter of December 11, 1998 pre-certifying Plaintiff's December 11, 1998 hospitalization and surgery.** Finally, Plaintiff relied on Defendant's misrepresentation regarding her health insurance coverage when she entered Pendleton Memorial Methodist Hospital on December 14, 1998 for surgery and a three day hospitalization. **See Plaintiff's Affidavit, Exhibit A to Plaintiff's Original Memorandum in Support of her Motion for Summary Judgment, Paragraph 8.**

A.  <u>**BOTH P&S HEALTH AND DEFENDANT HMO FAILED TO ACT AS A PRUDENT ADMINISTRATOR**</u>

In its memorandum in support of its Cross Motion for Summary Judgment, Defendant HMO argues that:

> **"Blue Cross had no indication that Plaintiff's employer would default on its obligations to pay the insurance premiums."**

That statement is both false and contrary to the explicit 30(b)(6) deposition testimony of

2

Defendant HMO's Representative. At her 30(b)(6) deposition, Ms. Parish expressly testified that Defendant was aware on December 1, 1998 that P&S Health had not paid its premium which was due on that date. Ms. Parish further testified that as a result of P&S Health's failure to timely pay the premium which was due on December 1, 1998, Defendant suspended the payment of claims under P&S Health's policy effective December 1, 1998. At page 43 of her deposition, Ms. Parish testified thusly on the issue of the suspension of Plaintiff's coverage:

> **I know that the claims will not be paid if the pay to date is not current. If there was claims from December the 1st to December the 21st, the claims would not be paid.**
>
> **See Exhibit C, Page 43 of Defendant's 30(b)(6) Deposition.**

If Defendant HMO had not suspended coverage on December 1, 1998, then it might be able to argue that it **"had no indication that Plaintiff's employer had defaulted on its obligation to pay the insurance premiums on its employee group policy."** However, since it did suspend coverage 10 calendar days prior to pre-certifying the Plaintiff's December 14, 1998 hospitalization, Defendant HMO Louisiana cannot possibly argue that it acted as a prudent co-fiduciary when it pre-certified and approved Plaintiff's hospitalization.

In Smith v. Provident Bank, 170 F.3d 609, 616 n.3 (6th Cir. 1999), the Court held that ERISA plan participants can sue for breaches of fiduciary duty that harm them as individuals. See Allinder v. Inter-City Products Corp., 152 F.3d 544, 551 (6th Cir. 1988), cert denied 525 U.S. 1178, 119 S.Ct. 1115, 143 L.Ed.2d 1110 (1998). Here, Plaintiff has suffered harm as a result of Defendant HMO's breach of the fiduciary duty which it owed to Plaintiff. Since it did have knowledge that Plaintiff's employer had not paid its premium which was due on December 1, 1998, Defendant HMO failed to

act as a prudent administrator because it failed to notify Plaintiff of her employer's default prior to her December 14, 1998 hospitalization.

B. **THE HOLDING IN WILLETT IS GOOD LAW AND THE ELEVENTH CIRCUIT'S HOLDING IN WILLETT WHILE NOT CONTROLLING IS EXTREMELY PERSUASIVE**

In its memorandum, Defendant HMO attempts to circumvent the clear applicability of the holding in Willett v. Blue Cross and Blue Shield of Alabama, 953 F.2d 1335 (11th Cir. 1992). Obviously if this Court applies the holding in Willett to the facts sub judice, the Court should rule for the Plaintiff.

1. **Defendant HMO Had Sufficient Time To Notify Plaintiff That Her Coverage Had Been Suspended.**

In this case, Defendant HMO suspended the group hospitalization coverage which it provided to P&S Health's employees, including the Plaintiff, on December 1, 1998. Ten days later Defendant pre-certified Plaintiff's hospitalization on December 11, 1998. Additionally, Plaintiff was not admitted to the hospital until December 14, 1998, 13 days after Defendant suspended her coverage. Defendant HMO has not argued that it was unaware on December 11, 1998 that Plaintiff's coverage had been suspended. In fact, in her 30(b)(6) deposition Ms. Parish admitted the contrary. Nevertheless, Defendant did not advise the Plaintiff that her coverage had been suspended or terminated until January 26, 1999.

Defendant HMO tries to distinguish away the clear holding in Willett by arguing that the period that the employer in Willett failed to make the required premium payments was longer than that here. That argument obfuscates the clear holding in Willett. The basis of the Court's holding

in <u>Willett</u> was Blue Cross' knowledge that plaintiff's employer, Mays, had failed to notify its employees that their coverage had been suspended. It had nothing to do with the length of time that plaintiffs' employer had failed to pay its premium. At pages 1341-42 of its holding, the Eleventh Circuit stated the following:

> **If Blue Cross had knowledge of May's (Plaintiff's employer's) failure to inform the plan beneficiaries that their coverage had lapsed for non-payment of premiums, then Blue Cross incurred a duty to take reasonable steps to remedy the breach.**

Here Defendant HMO knew on December 11, 1998 when it pre-certified the Plaintiff's hospitalization that P&S Health had not advised Plaintiff that her coverage had been suspended for non-payment, and Defendant HMO took no action until January 26, 1999 to notify Plaintiff that she had no coverage. If Defendant HMO had notified Plaintiff prior to her December 14, 1998 hospitalization that her coverage had been suspended, Plaintiff would not have entered the Pendleton Memorial Methodist Hospital on December 14, 1998, and Plaintiff would have made other arrangements for her surgery.

Defendant HMO also argues that the Eleventh Circuit's holding in <u>Willett</u> is not controlling in the Fifth Circuit. While that is technically correct, the <u>Willett</u> decision is the only appellate court decision in a case with facts very similar to those sub judice. Additionally, while its decisions are not controlling, the Eleventh Circuit is the Circuit which is the closest to the Fifth both in regard geography and judicial philosophy. Additionally, the Eleventh Circuit's decision in <u>Willett</u> has not been reversed and is still good law. Furthermore, although not on the same issue which is before this Court, three other Federal Courts of Appeals have cited the holding in <u>Willett</u> in subsequent

5

decisions. See In Re Unisys Savings Plan Litigation, 74 F.3d 420, 445 (3rd Cir. 1996); Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 855 (7th Cir. 1997); and Silverman v. Mutual Benefit Life Ins. Co., 138 F.3d 98, 104 (2nd Cir. 1998). No Federal Court of Appeal decision has ever disagreed with the holding in Willett, and it submitted that the Fifth Circuit would not either.

Respectfully submitted,

_____
CLEMENT P. DONELON, BAR #4996
Attorney at Law
4508 Clearview Parkway, Suite 1-B
Metairie, Louisiana 70006-2379
Telephone: (504) 887-0077

CERTIFICATE OF SERVICE
I hereby certify that the foregoing has been served upon opposing counsel by hand delivery or by placing a copy of same in the U.S. Mails, postage prepaid and properly addressed, on this _____ day of _____ 2001.



**BlueCross BlueShield of Louisiana**
An independent licensee of the Blue Cross and Blue Shield Association.

C4 12-1-98

P.O. Box 98029 ~ Baton Rouge, Louisiana 70898-9029 ~ 504/295-3307 ~ FAX 504-295-2054

P&S Health Service - Management & Office Only
Attn Sheila Lumbi
1501 Newton St
New Orleans La          70114

December 21, 1998
RE: Group No. 26503-000
Area: 99

Dear Group Leader:

We all know the importance of maintaining active health care coverage. Since timely payment of your premium is necessary to properly administer your plan, I'm certain you can understand our concern over the fact that we did not receive your December 01, 1998 payment.

Your group contract may be part of an employee welfare benefit plan governed by terms of the Employee Retirement Income Security Act of 1974 (ERISA). Under ERISA, your company has a fiduciary duty to its employees and their dependents (participants) to ensure that the plan remains in full force and effect, and also to keep employees fully informed of all developments as they concern the employee welfare benefit plan and your company's failure to pay premiums.

As the insurer of your health plan, Blue Cross and Blue Shield of Louisiana also bears a co-fiduciary responsibility to properly inform its policyholders if their plan has been terminated.

Please check your records to determine if your payment has been remitted. If so, please contact the Customer Service Department at (504) 291-5370 or 1-800-599-2583 so we can take action to reinstate your plan.

If you find that payment has not been made, please remit your check immediately to avoid termination of your group's coverage.

We appreciate your business and hope to continue offering you and your company affordable, quality health care coverage from a company serving Louisianians for more than 60 years.

Sincerely,

*Terri D. Klack*

Terri D. Klack
Director
Benefits Administration

Blue Cross

**EXHIBIT A**

Louisiana Health Service & Indemnity Company ~ 5525 Reitz Avenue ~ Baton Rouge, Louisiana 70809-3802

# HMO Louisiana, Inc.

A subsidiary of Blue Cross and Blue Shield of Louisiana, independent licensees of the Blue Cross and Blue Shield Association

P. O. Box 98024
Baton Rouge, Louisiana 70898-9024

Phone: 225/293-0625
       800/376-7741
Fax:   225/247-2680



LOUISIANA BLUE HEALTHPLANS

December 11, 1998

BEVERLY RILEY
1516 ST ANN
NEW ORLEANS, LA   70116

Patient: BEVERL RILEY
Pre-certification # : 198120832
Contract number: 4378439591
Date of service: 12/14/1998
Hosp: PENDLETON MEMORIAL METHODI

The admission to the hospital referenced above has been initially approved for 3 days.

IT IS IMPORTANT FOR YOU TO KNOW THAT . . .

this approval of the inpatient hospital setting is based on information provided by the above listed hospital and/or physician and DOES NOT AUTHORIZE A GUARANTEE OF BENEFITS.

IF THE PATIENT REQUIRES CONTINUED HOSPITALIZATION BEYOND THE NUMBER OF DAYS APPROVED . . .

the attending physician or authorized hospital representative should contact the Managed Care Department at 1-800-376-7973 on or before the above days expire. BENEFITS MAY BE DENIED FOR SERVICES RENDERED DURING ADDITIONAL HOSPITAL DAYS THAT ARE NOT AUTHORIZED.

The terms of your contract place on you, the subscriber, the sole responsibility for ensuring that all inpatient hospitalizations are pre-certified.

Utilization Management Department

cc: Attending Physician
    Facility
    Member File

(SUBSCRIBER COPY)



EXHIBIT B

**Page 41**

1    Q    And that's when the computer was
2 programmed to go back and look to see if
3 December had been paid?
4    A    Yes, sir.
5    Q    So, for twenty-one days or three
6 weeks, nobody -- or the system was oblivious,
7 unaware that this bill had not been paid?
8    MR. BAAY:
9      Object. It misstates what
10      her --
11    MR. DONELON:
12      I'm not trying to state her
13      testimony. I'm just trying to get
14      an answer.
15 BY MR. DONELON:
16    Q    Between December the 1st, when --
17 let me go back. Blue Cross says the premium
18 was due on December the 1st, 1998, from P&S,
19 is that correct?
20    A    Yes, sir.
21    Q    Okay. And am I understanding that
22 between December the 1st of '98 and December
23 21st of '98, Blue Cross took no action that
24 you're aware of to advise P&S or its
25 employees that the payment was late?

**Page 42**

1    A    That's right.
2    Q    And that was the ordinary way that
3 late payments were handled? That they
4 wouldn't get a notice until the next month's
5 bill was going out?
6    A    Yes, sir.
7    Q    Okay. So, if a claim came in or was
8 made between December the 1st of '98 and
9 December the 21st of '98, the system would
10 not know that people -- let me go back.
11 People who are handling claims would not know
12 that there is a problem with billing on that
13 particular Group policy?
14    MR. BAAY:
15      I think it's outside the scope
16      of her area because that's a claims
17      issue.
18    MR. DONELON:
19      It may be outside of hers.
20      It's not outside of this, I don't
21      believe.
22    MR. BAAY:
23      I don't know where that would
24      fall under.
25    MR. DONELON:

**Page 43**

1      I think, number one, the
2      Contract.
3 BY MR. DONELON:
4    Q    But do you know the answer to that?
5    A    I know that the claims will not be
6 paid if the pay to date is not current. If
7 there was claims from December the 1st to
8 December the 21st, the claims would not be
9 paid.
10    Q    Okay. You know that for a fact?
11    A    Yes, sir.
12    Q    So, if somebody made a claim on this
13 policy between the 1st and the 21st, the
14 people who would be processing that claim
15 would have access to information indicating
16 that the premium was late?
17    A    Yes, sir.
18    Q    And where would that information be
19 ascertainable from?
20    A    We have edits in our system.
21    Q    Tell me about that.
22    A    I don't know about those. That's
23 not my --
24    Q    Let me see if I understand.
25    A    I don't know about the claims area.

**Page 44**

1    Q    What you're saying here is
2 that -- so that Blue Cross doesn't lose a lot
3 of money paying out a lot of claims on a big
4 Group policy when the premium hadn't been
5 paid, the system has a built in check that
6 it'll kick it out?
7    A    Yes, sir.
8    Q    I got you. I call your attention to
9 Blue Cross Number 2. And I ask you to read
10 for me the third paragraph down.
11    A    "As the insurer of your health plan,
12 Blue Cross and Blue Shield of Louisiana also
13 bears a co --
14    MR. BAAY:
15      Fiduciary.
16    THE WITNESS:
17      -- fiduciary responsibility to
18      properly inform its policy holders
19      if their plan has been terminated."
20 BY MR. DONELON:
21    Q    And that's in the December 21st,
22 1998, letter, is it not?
23    A    Yes, sir.
24    Q    And that was
25 Service?



EXHIBIT C