

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEVERLY RILEY | CIVIL ACTION |
| VERSUS | NO: 00-0046 |
| HMO LOUISIANA, INC., ET AL | SECTION: "T"(1) |

### ORDER AND REASONS

Before the undersigned are the cross-motions for summary judgment by the plaintiff, Beverly Riley ("Riley"), and the defendant, HMO Louisiana, Inc. ("Blue Cross"). Rec. docs. 41 and 42.[1]

### PROCEDURAL BACKGROUND

Riley filed her complaint in this matter on January 6, 2000, and sued Blue Cross and Sheila Lumbi and Paul Lumbi d/b/a P&S Home Health Service ("P&S"). Rec. doc. 1. Riley alleged three causes of action: (1) the defendants violated the provision of 29 U.S.C. § 1161("COBRA") by failing to afford her the opportunity to continue her group health insurance coverage after P&S terminated her employment on November 30, 1998; (2) Blue Cross unlawfully and in bad faith violated the provisions of its insurance contract with Riley by refusing to offer her the opportunity

---

[1] The parties consented to the trial of the case before the undersigned. Rec. doc. 34.



DATE OF ENTRY
JAN 1 6 2002

to continue her health coverage after the termination of her employment; and (3) Riley relied upon Blue Cross' authorization to her detriment. Riley dismissed Sheila Lumbi without prejudice. Rec. doc. 10. A judgment by default was obtained against Paul Lumbi. Rec. doc. 14.

Blue Cross moved to dismiss Riley's state law claims (Rec. doc. 36), and on October 16, 2001, Blue Cross' motion was granted and all of Riley's state law claims, including her claim of detrimental reliance, were dismissed. Rec. doc. 40. Riley ordered to file the administrative record and the parties were ordered to filed cross-motions for summary judgment. Rec. doc. 40. Riley filed a motion for summary judgment on her federal claims ( Rec. doc. 41), and Blue Cross filed a cross-motion for summary judgment on the federal claims. Rec. doc. 42. Riley also filed a reply memorandum. Rec. doc. 45.

## STATEMENT OF THE FACTS

The undisputed facts are as follows:

1. Riley began working for P&S as a nurse in September 1996 and was a participant in the P&S employee group health plan. Riley affidavit, Exhibit A to Rec. doc. 41.

2. On October 22, 1998, Blue Cross received an application from P&S for group health coverage for its management and office personnel, a total of four persons including Riley. Exhibit A to Rec. doc. 42.

3. P&S sought coverage effective November 1, 1998. Exhibit A to Rec. doc. 42.

4. Blue Cross approved P&S' application for coverage on November 13, 1998. Blue Cross' statement of uncontested facts attached to Rec. doc. 42.

5. In mid-November, 1998, Riley was advised by her physician that she should undergo a non-emergency hysterectomy. Riley affidavit, Exhibit A to Rec. doc. 41.

6. On November 23, 1998, Blue Cross mailed identification cards and

certificates of coverage to P&S for each enrolled employee, including Riley. Blue Cross' statement of uncontested facts attached to Rec. doc. 42.

7. On November 24, 1998, P&S paid Blue Cross the monthly premium of $1,229.00 and it was credited to the group contract for the month of November, 1998. Blue Cross' statement of uncontested facts attached to Rec. doc. 42, and Exhibit B at pp. 17-20 to Rec. doc. 41.

8. On or before November 30, 1998, P&S terminated its operations and Riley's employment with P&S. Rec. doc. 1.

9. There is no evidence that P&S or Riley notified Blue Cross that P&S had ceased to do business and that Riley's employment was terminated as of November 30, 1998.

10. There is no evidence that Riley, either directly or indirectly through payroll deductions, paid any premium for health coverage with Blue Cross after November 30, 1998.

11. There is no evidence that P&S informed its employees, including Riley, when it closed its operations and terminated them by November 30, 1998, that their health insurance coverage also terminated.

12. The monthly premium from P&S was due on December 1, 2001. Exhibit E to Rec. doc. 42.

13. On December 11, 1998, Blue Cross pre-certified Riley for a three-day hospitalization, but Blue Cross did not notify Riley that P&S had not paid the premium for December. Blue Cross' statement of uncontested facts attached to Rec. doc. 42.

14. Riley was hospitalized for three days, December 14-16, 1998 in connection with the surgery. Riley affidavit, Exhibit A to Rec. doc. 41.

15. On December 21, 1998, Blue Cross sent P&S a letter warning that no premium had been received for the month of December. The letter contained the following statement:

> Under ERISA, your company has a fiduciary duty to its employees ... to keep employees fully informed of all developments as they concern the employee welfare benefit plan and your company's failure to pay premiums.

3

>As the insurer of your health plan, Blue Cross ... also bears a co-fiduciary responsibility to properly inform its policyholders if their plan has been terminated.

Exhibit E to Rec. doc. 42.

16. On January 21, 1999, Blue Cross notified P&S that the group health coverage was terminated. Exhibit F to Rec. doc. 42.

17. Blue Cross testified that if a claim was made after December 1, 1998, while the December premium was unpaid, the claim would not be paid. Exhibit B at pp. 40-44 to Rec. doc. 41.

18. Blue Cross refused to pay for the expenses of Riley's December, 1998 surgery and hospitalization. Blue Cross' statement of uncontested facts attached to Rec. doc. 42.

## STANDARD FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). The parties present cross-motions for summary judgment. They agree that there are no genuine issues of material fact and that the matter is ripe for resolution on their motions.

## DISCUSSION

Riley's complaint raised COBRA issues, but she did not brief them in her motion for summary judgment. The undersigned's order dismissing Riley's state law claims and requiring the parties to file the administrative record and cross-motions for summary judgment on the federal claims (Rec. doc. 40) controls the disposition of the case. A claim or defense not asserted by the

parties in the cross-motions for summary judgment is waived. See Hodges v. United States, 597 F.2d 1014, 1017 (5th Cir. 1979) (failure to preserve claim or defense in pretrial order constituted waiver). Riley's COBRA claims are waived.

In her motion for summary judgment Riley contends that Blue Cross breached a fiduciary duty to her. Riley contends that when she sought and obtained Blue Cross' pre-certification of her hospitalization, Blue Cross breached its duty to inform her that P&S had not paid the premium due on December 1, 1998, and that her health coverage was suspended pending receipt of that payment.

Blue Cross responds that under ERISA insurance companies are co-fiduciaries with employers who fund group health plans like the P&S plan at issue. 29 U.S.C. § 1105. As a co-fiduciary, insurers can be held liable for a breach of fiduciary duties in three specific instances: (1) by participating knowingly or knowingly undertaking to conceal a known breach of duty by the other fiduciary; (2) by enabling the other fiduciary to commit the breach through failure to act as a prudent administrator; or (3) by failing to make reasonable efforts to remedy the breach if the insurer has knowledge of the breach by the other fiduciary. 29 U.S.C. § 1105(a)(1-3). As a co-fiduciary, Blue Cross' conduct is measured by the "prudent man standard of care." 29 U.S.C. § 1104(a).

Blue Cross contends that it acted as a prudent administrator. Although Blue Cross issued the certification letter on December 11, 1998, it had no indication that P&S would default on the contract. Blue Cross also contends it had no duty to advise Riley that P&S was late on the premium payment due on December 1, 1998. Blue Cross argues that to impose on it the obligation to notify all covered employees anytime an employer was late with a premium payment would result in chaos in the group health insurance industry. Blue Cross further contends there was no knowing effort by it to conceal any alleged breach of duty by P&S to Riley, nor did it enable P&S to breach any alleged

5

duty to Riley.

Riley argues that <u>Willett v. Blue Cross and Blue Shield of Alabama</u>, 953 F.2d 1335 (11th Cir. 1992), shows that the issue should be resolved in her favor. In <u>Willett</u>, Mays Enterprises, Inc. ("Mays") had a group health insurance policy with Blue Cross and Blue Shield of Alabama ("Blue Cross Alabama"). Monthly premiums were due on the first of each month, but there was a thirty day grace period for late payments. During the grace period insurance coverage continued, subject to the payment of the premium. Mays failed to make the premium due on November 1, 1987. Thereafter Mays and Blue Cross Alabama entered into negotiations regarding the payment of the past due premium. These negotiations continued into February, 1988. In February, Mays submitted a payment of $8,000 for about half of the past due balance. On March 19, 1988, Mays laid off all employees and on March 21, 1988, Blue Cross Alabama returned the $8,000 check and canceled the health insurance coverage retroactive to November 1, 1987. Mays never notified its employees that: (1) coverage was suspended effective November 1, 1987; (2) coverage was subject to cancellation; or (3) Mays made no premium payments after October 1, 1987. From November, 1987, through termination on March 19, 1988, Mays deducted its employees' share of the health insurance premium and gave the employees the impression that their health insurance coverage remained in effect. On March 28, 1988, the former Mays employees were notified that they did not have health insurance coverage as of November 1, 1987. A group of former employees, who incurred medical expenses during the period between November 1, 1987 and March 28, 1988, sued.

The Eleventh Circuit said:

> In the case at bar, Blue Cross may be liable to beneficiaries under section 1105(a). It is clear that even if Blue Cross was not initially aware that Mays had not informed its employees that their coverage was suspended effective November 1,

> 1987, if several of the beneficiaries indeed called Blue Cross agents regarding coverage, then the insurer could have been effectively put on notice that Mays had breached its fiduciary duty to its employees by failing to inform them that their coverage was suspended. 29 U.S.C.A. § 1105(a)(3). If Blue Cross had knowledge of Mays' failure to inform the plan beneficiaries that their coverage had lapsed for nonpayment of premiums, then Blue Cross incurred a duty to take reasonable steps to remedy the breach. *Id.* Moreover, if Blue Cross chose to misrepresent affirmatively to the beneficiaries that they were still covered under the Mays plan rather than inform the beneficiaries that their coverage had lapsed, then liability premised on concealment of the breach would also exist. *Id.* at § 1105(a)(1). Section 1105(a)(1) creates liability for knowing participation in, or knowing concealment of, "an act or omission of such other fiduciary, knowing such act or omission is a breach." Thus, liability on Blue Cross' part may exist under either section 1105(a)(1) or section 1105(a)(3).

953 F.2d at 1341-42. The Eleventh Circuit did not resolve the plaintiffs' claims against Blue Cross Alabama because there were no factual findings regarding when or if Blue Cross Alabama became aware of the fact that Mays failed to inform its employees about the suspension of their health coverage. The Court held:

> In order to prevail on remand, the plaintiffs-beneficiaries must establish either (1) that Blue Cross was aware of Mays' breach of its fiduciary duties and that it failed to take reasonable steps to remedy Mays' breach or (2) that Blue Cross knowingly concealed or participated in Mays' breach of the duty.

953 F.2d at 1342.

Riley's attempt to rely on Willett and 29 U.S.C. § 1105(a)(3) presupposes that P&S breached a fiduciary duty to Riley. In Willett Mays failed to notify the employees/beneficiaries in a timely fashion that their coverage was suspended effective November 1, 1987. Based upon Riley's contentions with respect to Blue Cross, she apparently contends that P&S breached an alleged duty to inform Riley that she had no health benefits after she was terminated on November 30 and P&S shut down.

7

In <u>Willett</u>, Mays continued to operate and employ the plaintiffs after it stopped paying the premiums on the group health coverage. Indeed Mays continued to deduct for its employees' share of the health insurance coverage for nearly five months after it ceased paying for the coverage. The Eleventh Circuit described Mays' conduct as giving the employees the impression that their health insurance coverage remained in effect. 953 F.2d at 1338. Riley has shown no conduct by P&S that gave her the impression that she continued to have coverage after November 30, 1998. The only facts before the undersigned show otherwise. Riley and all the other employees were terminated on or before November 30, 1998, and the business was shut down by that date.

Assuming <u>arguendo</u> that P&S owed a duty to Riley to tell her at the time of her termination that P&S would not provide health insurance coverage to her after November 30, 2001, its last date of operation, and P&S breached that duty, Riley must show that Blue Cross was aware of P&S' alleged breach of its fiduciary duty. There is no evidence that Blue Cross knew anything about P&S' decision to terminate Riley and to close its business on November 30, 2001, nor is there any evidence that Blue Cross knew that P&S did not notify Riley that her health coverage was terminated when it shut down. The only evidence that Blue Cross possessed was that P&S was late on its payment of the December 1, 1998 premium. This is insufficient to show that Blue Cross possessed knowledge that P&S breached its duty to Riley. Inasmuch as Blue Cross had no knowledge of any breach by P&S, it cannot be liable to Riley under 29 U.S.C. § 1105(a)(3).

Riley also argues liability under 29 U.S.C. § 1105(a)(1) and the statement in <u>Willett</u> that "if Blue Cross (Alabama) chose to misrepresent affirmatively to the beneficiaries that they were still covered under the Mays plan rather than inform the beneficiaries that their coverage had lapsed, then liability premised on concealment of the breach would also exist." 953 F.2d at 1342. On remand

the plaintiffs in Willett were required to show that "Blue Cross knowingly concealed or participated in May's breach of the duty." Id. (Emphasis added). As demonstrated above, there is no evidence to support the conclusion that Blue Cross was aware of any breach by P&S of any alleged duty owed to Riley. The mere fact that Blue Cross knew P&S was late on the premium payment due on December 1, 1998, is not sufficient to show that it knowingly concealed or participated in P&S' alleged breach of a duty to Riley.

Riley also argues that, on the undisputed facts and pursuant to Cerasoli v. Xomed, Inc., 47 F.Supp.2d 401, 405(W.D.N.Y. 1999), and 29 U.S.C. § 1109(a), she established a claim of detrimental reliance entitling her to damages and costs, including attorney's fees. Riley's complaint raised detrimental reliance as a state law claim, which was dismissed. Rec. doc. 40. Riley's reply memorandum attempts for the first time to raise detrimental reliance as a federal claim. Assuming arguendo that Riley properly presents a federal law claim of detrimental reliance, she describes the elements of this claim as follows:

1. Blue Cross was acting in a fiduciary capacity when it sent the letter of December 11, 1998;

2. Blue Cross made a material misrepresentation to Riley in the December 11 letter when it approved Riley's admission to the hospital for three days; and

3. Riley relied on that misrepresentation to her detriment, when she proceeded with the surgery.

A fiduciary found liable under Section 1109(a) shall:

> (M)ake good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Assuming for the moment that Riley can establish the elements of a claim of detrimental reliance under Section 1109(a), the issue is the available relief under that section. Riley's complaint seeks damages for mental anguish and medical expenses incurred by her and costs, including attorney's fees. Riley's own authority, Cerasoli, shows that such relief is not available under Section 1109(a). 47 F.Supp.2d at 411-414. Cerasoli relied on Mertens v. Hewitt Associates, 113 S.Ct. 2063, 2071 (1993), which held that where the plaintiff sought relief under 29 U.S.C. § 1132(a)(3), monetary damages were not available. Although Riley seeks relief under Section 1109(a), that section and Section 1132(a)(3) employ essentially the same language: "such other equitable or remedial relief as the court may deem appropriate" [Section 1109(a)] and "other appropriate equitable relief" [Section 1132(a)(3)].

Cerasoli shows that Riley has no claim for benefits under the plan itself, because the contract providing those benefits terminated with her employment and the closure of P&S. In effect Riley is pursuing a negligence claim. Cerasoli also cited a similar case, McLeod v. Oregon Lithoprint, Inc., 102 F.3d 376 (9th Cir. 1996), cert. denied, 117 S.Ct. 1823 (1997). In McLeod the plaintiff failed to allege any fraud on the part of any fiduciary, but instead contended the fiduciary failed to notify her in a timely manner of her rights to elect a certain coverage. The Ninth Circuit said this was in essence a negligence claim, where the plaintiff sought to be made whole through an award of monetary damages for her loss and her emotional distress. The court found such damages were barred by the Supreme Court's decision in Mertens. 102 F.3d at 378. Likewise here, even if a detrimental reliance claim could be supported, Riley is not entitled to damages under Section

1109(a).[2]

IT IS ORDERED that the Blue Cross' cross-motion for summary judgment (Rec. doc. 42) is GRANTED and Riley's motion for summary judgment (Rec. doc. 41) is DENIED.

```
                              _____
                                        SALLY SHUSHAN
                                 United States Magistrate Judge
```

---

[2] The fact that Riley's claim is a negligence claim prompts questions that she fails to discuss. How can a person who is terminated and who watched her employer go out of business at the same time, conclude she remains covered? If the business is shut down, who is paying the premiums? Riley was not a low level employee. She was part of the four person management and office team that obtained coverage from Blue Cross. The other nineteen employees of P&S were without coverage during its last month of operation, if not earlier. Blue Cross' statement of uncontested facts at Rec. doc. 42. Although Riley submitted an affidavit, she chose not to address these questions.